# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

DONALD TISDALE,

    *Defendant.*

Case No. 11-10253-01-EFM

## MEMORANDUM AND ORDER

Defendant Donald Tisdale brings this Motion to Suppress (Doc. 14) asking the Court to suppress evidence seized during and as a result of the execution of a search warrant at his residence. The parties submitted written and oral arguments on the motion, as well as evidence presented at a hearing on April 13, 2012. Tisdale argues that the search of his residence violated his rights under Fourth Amendment because excessive delay in the execution of the warrant rendered it stale. Probable cause for a search cannot be based on stale information that no longer suggests the items to be seized will be found in the place to be searched. Because information known to law enforcement suggested the criminal activity was of a continuing nature and that controlled substances could be obtained from Tisdale's residence in the future, probable cause did not dissipate before the execution of the warrant. The search did not violate the Fourth Amendment; accordingly, the Court denies Tisdale's motion.

## I. Factual and Procedural Background

Tisdale is charged with possession with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1). These charges stem from the seizure of cocaine, marijuana, and drug paraphernalia during a search of Tisdale's residence in Wichita, Kansas. The search was executed on April 25, 2011, pursuant to a warrant signed on April 22, 2011. The Wichita Police Department applied for the warrant after learning that crack cocaine was being stored and sold at a house located at 2141 North Minneapolis Street. The police first heard of the drug operation from a confidential informant (CI), and then arranged for the CI to purchase crack cocaine at that location. According to accounts from the CI and police, the CI entered the house at 2141 North Minneapolis and purchased from a black man a white, chunky substance that field-tested positive for cocaine. During the exchange, the seller told the CI to return to the house if he needed more crack cocaine. The controlled buy occurred sometime in the seventy-two hours before the police applied for a search warrant.[1] The police did not monitor the house in the meantime, but had no reason to believe the resident selling drugs had left the premises or was no longer engaged in illicit activities.

Based on the foregoing account of the drug transaction, a state judge granted the Wichita police a warrant to search the home at 2141 North Minneapolis and seize any illicit drugs and numerous other items related to the drug trade. Due to officers' work schedules and other logistical

---

[1] Detective Bartel, who authored the warrant application, testified at the hearing that his affidavit does not state the exact date of the controlled buy because the police wished to protect the identity of the CI. The Detective informed the Court that, upon information and belief, the defendant made few enough sales and kept adequate enough records that a more precise identification of the time of the controlled buy would allow the defendant to ascertain the identity of the CI. The Court accepted the more generalized representation of the time of the buy, but consequently for the purposes of this motion, the Court will assume the full seventy-two hours passed between the buy and the application for a warrant. Thus, the Court assumes that six days elapsed between the buy and the execution of the warrant.

issues, the police waited three days to execute the warrant.[2] Tisdale alleges that the delay destroyed the warrant's underlying probable cause determination, rendering the warrant invalid and the search of Tisdale's home unconstitutional. Tisdale contends that the all evidence seized during and as a result of the search must be suppressed as fruit of the poisonous tree.[3] Tisdale further argues that the good-faith exception to the exclusionary rule[4] does not apply in this case because no reasonable law enforcement officer could reasonably believe the search warrant in this case was constitutionally valid.

## II. Analysis

It is axiomatic that the Fourth Amendment requires a showing of probable cause to search a person's property. "Probable cause to search cannot be based on stale information that no longer suggests the items sought will be found in the place to be searched."[5] For that reason, time is undoubtedly a crucial element of probable cause.[6] But courts do not make probable cause determinations by simply counting the number of days that passed between the receipt of information and the date the warrant was issued or executed.[7] Instead, the Tenth Circuit has directed

---

[2] Detective Bartel testified that Kansas state law requires law enforcement to execute warrants within 96 hours of their issuance, but this rule is not found in federal law and is, therefore, not binding on a federal court's determination of probable cause.

[3] *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (articulating the Court's long-held exclusionary rule as providing that "evidence seized during an unlawful search [can]not constitute proof against the victim of the search").

[4] *See United States v. Leon*, 468 U.S. 897, 922 (1984) (recognizing a good-faith exception to the exclusionary rule when officers' reliance on a technically-deficient warrant is objectively reasonable).

[5] *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990), *accord United States v. Mathis*, 357 F.3d 1200, 1206–07 (10th Cir. 2004).

[6] *United States v. Rahn*, 511 F.2d 290, 292 (10th Cir. 1972).

[7] *See United States v. Brinklow*, 560 F.2d 1003, 1005 (10th Cir. 1977).

the courts to consider the passage of time as it relates to "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."[8] After weighing these factors, probable cause ultimately becomes a test of common sense.[9]

Tisdale is correct in arguing that "[w]here the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time."[10] But when an individual is suspected of engaging in criminal activity that is continuous and ongoing, the passage of time becomes less critical.[11] In this case, Tisdale is charged with possession with intent to distribute controlled substances. The police received information from their CI that a black man was "*keeping and selling* crack cocaine" at Tisdale's residence.[12] The use of this participial phrase indicates that the CI either knew or believed that the drug activity at 2141 North Minneapolis was ongoing. The facts that (1) the CI was able to simply walk up to the house and purchase crack cocaine without any prior arrangement, and (2) that the resident who sold the CI the drugs told the CI to "return to the residence if more crack cocaine was needed"[13] both corroborate the continuing nature of the criminal activity at 2141 North Minneapolis. Furthermore, although drugs are both portable and disposable, information from the CI and the controlled buy told police that the drugs in this case were being stored at Tisdale's residence. This information eases

---

[8] *Mathis*, 357 F.3d at 1207.

[9] *Brinklow*, 560 F.2d at 1006 (citing *Brinegar v. United States*, 338 U.S. 160 (1949)).

[10] *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (finding that an affidavit that detailed four instances suggesting the defendant had an illicit supply of alcohol demonstrated probable cause for a search warrant even though the warrant application was made three weeks after the last incident).

[11] *See Mathis*, 357 F.3d at 1207 (holding that a warrant was not stale in part because the defendant was suspected of "continuous and ongoing drug activity").

[12] Gov't Ex. 1 (emphasis added).

[13] *Id.*

any concern that the residents of the house either moved or destroyed the drugs in the days that passed between the controlled buy and the execution of the warrant.[14] Finally, the Court notes that probable cause has been found in other cases where, like the facts here, the police sought and executed a search warrant days after a single controlled buy.[15]

Tisdale relies on *Huffines v. Indiana*,[16] a case from the Indiana Court of Appeals, to support his motion. The facts of *Huffines* are similar to those at bar in that law enforcement obtained a warrant to search the defendant's residence after a CI conducted a controlled buy of cocaine and observed drug paraphernalia inside the home.[17] This purchase occurred within seventy-two hours of the time the warrant application was filed, and the police executed the warrant eight days after it was issued.[18] The Indiana Court of Appeals concluded that the information supporting the warrant grew stale in the eight- to eleven-day period that elapsed between the buy and the warrant's

---

[14] *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986) (holding that a ten-day delay between the time the defendant was seen carrying a gun and the issuance of a search warrant for the defendant's residence did not render the information stale because people generally keep weapons in their homes); *cf. United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974) (finding no probable cause for a search warrant when the property to be seized was removable and the affidavits contained no information of suspected criminal activity in the preceding three months).

[15] *See United States v. Hinson*, 585 F.3d 1328, 1334 (10th Cir. 2009) (holding that the passage of a month from a controlled buy to the arrest of the defendant did not render the information stale); *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008) (holding that a two-week period between a controlled buy and issuance of a warrant did not render the information stale because the information was supported by a belief that the defendant was engaged in ongoing criminal activity "and evidence of his illegal activities would be found at his residence"); *see also Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) ("In investigations of ongoing narcotics operations, we have held that intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale.").

[16] 739 N.E.2d 1093 (Ind. Ct. App. 2000).

[17] *Id.* at 1094.

[18] *Id.*

execution because the government "failed to demonstrate that continuing criminal activity was suspected and corroborated."[19]

The search of Tisdale's residence is distinguishable from *Huffines* in two ways. First, the Wichita police did suspect—and the seller's comments to the CI during the controlled buy corroborate—that 2141 North Minneapolis was site of continuous and ongoing criminal activity. Second, a period of three to six days elapsed in this case as compared to the eight- to eleven-day period in *Huffines*. For these reasons, the Court finds *Huffines* inapplicable in the present case.

In conclusion, because information from the CI and the controlled buy indicated that illicit drugs were consistently stored and sold at 2141 North Minneapolis, probable cause to search the residence did not dissipate in the six days between the controlled buy and the execution of the warrant. Because the search of Tisdale's residence did not violate the Fourth Amendment, it is unnecessary to address his arguments related to the exclusionary rule and its good-faith exception.

**IT IS ACCORDINGLY ORDERED** this 16th day of April, 2012 that Defendant's Motion to Suppress Evidence (Doc. 14) is hereby **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[19] *Id.* at 1097.